504 F.2d 911
 Alvin G. DOYLE, Plaintiff-Appellant,
v.
BETHLEHEM STEEL CORPORATION et al., Defendants-Appellees.
No. 74-2450 Summary Calendar.*
*Rule 18, 5th Cir.; Isbell Enterprises, Inc.
v.
Citizens Casualty Co. of New York et al., 5th Cir. 1970, 431
F.2d 409, Part I.
 United States Court of Appeals, Fifth Circuit.
 Dec. 9, 1974.
 
 Darryl J. Tschirn, Gothard J. Reck, New Orleans, La., for plaintiff-appellant.
 George E. Duncan, Beaumont, Tex., for Mathiasen Tanker, etc.
 Dennis Lewis, Asst. U.S. Atty., Beaumont, Tex., for United States.
 O. J. Weber, Jr., Beaumont, Tex., for Bethlehem Steel Co.
 Before COLEMAN, DYER and RONEY, Circuit Judges.
 RONEY, Circuit Judge:
 
 
 1
 Alvin G. Doyle, a shipyard worker employed by Bethlehem Steel Corporation, was injured while working aboard the USNS Yukon, a tanker owned by the United States of America. The USNS Yukon was operated by the Military Sea Transportation Service of the Department of the Navy, through a cost plus, fixed-fee arrangement with Mathiasen's Tanker Industries, Inc., whereby Mathiasen's was engaged to manage and conduct the business of the Government with respect to the operation of certain Navy tankers. Doyle filed a complaint against the United States and Mathiasen's for damages for personal injuries under theories of general maritime negligence and unseaworthiness. Mathiasen's filed a motion for summary judgment alleging that under the Public Vessels Act, 46 U.S.C.A. 781-790, and the Suits in Admiralty Act, 46 U.S.C.A. 741-752, Doyle's exclusive remedy was against the United States. The district court granted the motion and dismissed Doyle's claim against Mathiasen's. Doyle appeals pursuant to 28 U.S.C.A. 1292(a)(3). We affirm.
 
 
 2
 Doyle cites no authority and makes no argument that casts doubt upon the statutory language which bars admiralty claims against the United States' agents operating United States' vessels. Although the Suits in Admiralty Act at 46 U.S.C.A. 741 exempts vessels owned by the United States from in rem actions, section 742 provides that a libel in personam may be brought against the United States in cases where an admiralty proceeding could be maintained were the vessel privately owned or operated. Section 745 then provides that such remedy is exclusive of any action against the agent or employee of the United States whose act or omission gave rise to the claim.
 
 
 3
 . . . where a remedy is provided by this chapter it shall hereafter be exclusive of any other action by reason of the same subject matter against the agent or employee of the United States . . . whose act or omission gave rise to the claim . . ..
 
 
 4
 46 U.S.C.A. 745.
 
 
 5
 To circumvent this clear statutory bar to the suit against Mathiasen's, Doyle makes two contentions, one legal and one factual. First, Doyle contends that the Suits in Admiralty Act and the Public Vessels Act, as it incorporates the provisions of the Suits in Admiralty Act, were enacted as wartime measures to protect third persons managing or operating vessels in a time of crisis and that, in a time of peace, the statutes should not be construed to bar an injured party's cause of action against a tortfeasor. Second, Doyle asserts that an issue of material fact exists as to whether Mathiasen's actually was an 'agent' of the United States under the provisions of the statutes in question.
 
 
 6
 Doyle's contention that the exclusivity provision of the Suits in Admiralty Act should be judicially repealed in times of peace is unconvincing. The same argument was rejected by the Second Circuit in Carter v. American Export Isbrandtsen Lines, Inc., 411 F.2d 1185 (2d Cir. 1969). The facts of the Carter case are quite similar to those of the case at bar. In Carter, a seaman aboard the SS Exton, a vessel owned by the United States and operated by American Export Isbrandtsen Lines, Inc. under a standard form General Agency Agreement, filed suit against American Export for injuries he sustained on board ship in Saigon, South Viet Nam. The District Court for the Southern District of New York granted American Export's motion for summary judgment, in which American Export relied upon the exclusivity clause of the Suits in Admiralty Act. In affirming the summary judgment, the appellate court stated:
 
 
 7
 Carter admits that to prevail in his attempt to sue the general agent rather than the government he must persuade us to depart from our prior decision in Hanlon v. Waterman Steamship Corp., 265 F.2d 206 (2d Cir. 1959). He argues that Hanlon and Cosmopolitan Shipping Co. v. McAllister, Allister, 337 U.S. 783, 69 S.Ct. 1317, 93 L.Ed.2d 1692 (1949) also in point, were based on wartime measures and statutes no longer applicable to the present situation. We remain unconvinced. We are satisfied, as other courts have been, that the rule remains effective. See Petition of the United States, 367 F.2d 505 (3d Cir. 1966); Smith v. United States, 346 F.2d 449 (4th Cir. 1965).
 
 
 8
 411 F.2d at 1186.
 
 
 9
 The Fourth Circuit has likewise upheld the statute. In Smith v. United States, 346 F.2d 449 (4th Cir.), cert. denied 382 U.S. 878, 86 S.Ct. 163, 15 L.Ed.2d 119 (1965), the Court held that seamen injured on board a vessel owned by the United States but operated under a contract of management by an agent of the Government were precluded by the Suits in Admiralty Act from suing the agent. Noting that Congress in 1950 amended the Suits in Admiralty Act, originally passed in 1920, the Court explained the purpose behind the amendment.
 
 
 10
 The intent of the 1950 amendment to the Suits in Admiralty Act, promulgating the proviso excluding the agent from suability, was not to keep alive the liability of a private person, firm or corporation having charge of a Government ship. It was just to the contrary. It was the adoption by Congress of the exclusivity principle enunciated in Cosmopolitan Shipping Co. v. McAllister, supra, 337 U.S. 783, 69 S.Ct. 1317 (93 L.Ed. 1692). Another purpose was to designate unequivocally the one to whom a claim for loss caused by the Government's ship should be directed . . .. The legislative history avows this intent and object of the Act. Sen.Rep.No.1782, 81st Cong.2d Sess. (1950); 1950 U.S.Code Cong.Service, p. 4209 . . ..
 
 
 11
 346 F.2d at 453-454.
 
 
 12
 Since 1950 the wording of the Suits in Admiralty Act, specifically 46 U.S.C.A. 745, has remained unchanged by Congressional amendment. The 24 years which have ensued since the date of the amendment have seen both armed conflict and peace. The language of the statute, the same now as then, does not limit the exclusivity provision of the Act to times of war and we cannot amend by judicial decree what Congress itself has chosen not to amend for almost a quarter of a century. Doyle's exclusive remedy for the injuries which he sustained while working on the USNS Yukon is against the United States, and he cannot assert a claim if Mathiasen's was the agent of the United States in operation of the vessel.
 
 
 13
 Doyle asserts there is an issue of material fact as to whether Mathiasen's was the 'agent' of the United States in the operation of the USNS Yukon. He argues that the contract between Mathiasen's and the United States, annexed as an exhibit to the motion for summary judgment, does not specifically mention the USNS Yukon by name.
 
 
 14
 Under Rule 56, F.R.Civ.P., summary judgment is not to be granted if there is a genuine issue of material fact. A question of fact is not at issue, however, when reasonable men could not differ on the existence of that fact. Orozco v. State Farm Mutual Automobile Ins. Co., 360 F.Supp. 223 (S.D.Fla.1972), aff'd 480 F.2d 923 (5th Cir. 1973).
 
 
 15
 An examination of the evidence reveals no genuine issue as to the fact that Mathiasen's was the 'agent' of the United States in the operation and management of the USNS Yukon. Although Mathiasen's contract entitled 'Contract for Operation of U.S. Navy Tankers' does not refer to the USNS Yukon by name, the depositions of Stanley J. Hamm, Chief Officer of the USNS Yukon, and H. W. Berry, Port Engineer for Mathiasen's, establish that Mathiasen's operated the USNS Yukon for the United States Navy. Berry testified as follows:
 
 
 16
 Q. During the time you were employed by Mathiasen's Tanker Industries what type of vessels did you work on?
 
 
 17
 A. Oil tankers.
 
 
 18
 Q. And were they owned by Mathiasen's Tanker Industries?
 
 
 19
 A. Some were, some were not. In other words Mathiasen's owned four ships and operated somewhere between ten and twenty-eight ships for the Navy.
 
 
 20
 Q. For the United States Navy?
 
 
 21
 A. Yes. Directly under the Military Sea Lift Command.
 
 
 22
 Q. All right, and did you serve on the USNS YUKON at any time?
 
 
 23
 A. Yes . . ..
 
 
 24
 Q. How about as Port Engineer?
 
 
 25
 A. Yes . . ..
 
 
 26
 Q. Now the USNS YUKON-- what does the USNS stand for?
 
 
 27
 A. United States Navy Ship.
 
 
 28
 Q. All right to your knowledge by whom was the USNS YUKON owned?
 
 
 29
 A. United States Government. It's a publicly owned vessel.
 
 
 30
 Q. All right what part did Mathiasen's Tanker Industries play in connection with the operation of this vessel?
 
 
 31
 A. Mathiasen's only operated the ship for the Navy, and at a fixed fee.
 
 
 32
 Both Hamm and Berry identified a Certificate of inspection issued by the United States Coast Guard which describes the USNS YUKON as a Navy tankship, in service, civilian manned. Cf. Smith v. United States, 346 F.2d 449 (4th Cir.), cert. denied, 382 U.S. 878, 86 S.Ct. 163, 15 L.Ed.2d 119 (1965), Mission Santa Ynez, 1 A.M.C. 25 (C.D.Cal.1967). Doyle has not submitted any contrary evidence on this issue.
 
 
 33
 The judgment of the district court granting Mathiasen's motion for summary judgment is hereby affirmed.