Thomas CUSANELLI, Plaintiff,

v.

Leonard KLAVER, Perko Manufacturing Corp., Perkins Marine Lamp & Hardware Corporation, and Perko, Inc., Defendants.

No. CV 81-0547.

United States District Court,
E. D. New York.

June 23, 1982.

Fetell & Coen, P. C., Brooklyn, N. Y., for plaintiff.

J. Paul McGrath, Asst. Atty. Gen., Washington, D. C., Edward R. Korman, U. S. Atty., Brooklyn, N. Y., Janis G. Schulmeisters, Atty. in Charge, Torts Branch, Civ. Div. U. S. Dept. of Justice, New York City, for defendants.

MEMORANDUM & ORDER

PLATT, District Judge.

On May 27, 1978, Thomas Cusanelli was allegedly injured during an attempt to refloat a grounded vessel, the EL MAR II (El Mar), owned and operated by Leonard Klaver, when a stern towing cleat "ruptured and ripped off" the El Mar and "cata-

pulted" into his body. Complaint ¶ 13. At the time of the injury, Mr. Cusanelli was on active duty with the Coast Guard on board vessel CG 413–49. Mr. Cusanelli brought this action in New York State Supreme Court asserting a negligence claim against Mr. Klaver and a products liability claim against Perko Manufacturing Corp., Perkins Marine Lamp & Hardware Corp. and Perko, Inc., manufacturers and distributors of the towing cleat.

The United States (hereinafter sometimes referred to as "the Government"), acting on behalf of Leonard Klaver, filed a petition removing this case to Federal court. The basis for the removal as asserted by the Government is that at the time of the incident that resulted in Mr. Cusanelli's injury, Mr. Klaver was a member of the Coast Guard Auxiliary (Auxiliary) and the El Mar was assigned to authorized Coast Guard duty making it a public vessel as defined in 14 U.S.C. § 827.[1]

Actions arising out of the operation of public vessels may be brought only under the terms and conditions of the Public Vessels Act, 46 U.S.C. §§ 781–790 which incorporates by reference the Suits in Admiralty Act, 46 U.S.C. §§ 741–752.

The Suits in Admiralty Act provides that an action against the United States is "exclusive of any other action by reason of the same subject matter against the agent or employee of the United States ... whose act or omission gave rise to the claim." 46 U.S.C. § 745. Therefore, if, as the Government contends, the El Mar was a public vessel at the time of the accident, this action must be maintained against the United States and not its agent, Leonard Klaver.[2] *Carter v. American Export Isbrandtsen Lines, Inc.,* 411 F.2d 1185 (2d Cir. 1969); *see also, Dick v. United States,* 671 F.2d 724 (2d Cir. 1982).

The plaintiff moved to remand, attacking the pivotal assumption underlying the Government's removal by claiming that at the time of the incident the El Mar was not a public vessel and Mr. Klaver was not on authorized Coast Guard duty. The Government cross-moved to dismiss the complaint against it and Leonard Klaver 1) for lack of subject matter jurisdiction, 2) as barred by the statute of limitations,[3] and 3) for failure to state a claim upon which relief can be granted.[4]

It is undisputed that Leonard Klaver is a member of the Coast Guard Auxiliary and that on the day of the incident he had been on Auxiliary patrol. At some time between 4:30 and 5:00 PM but prior to the time his tour of duty would normally terminate he requested permission to leave his patrol due to the operating loss of one of the El Mar's engines. Permission was granted and he began to return to his home port. Approximately 1½ to 2 hours later, while still on direct route home, the El Mar ran aground,

1. Section 827 of Title 14 of the United States Code provides:
   Any motorboat or yacht, while assigned to authorized Coast Guard duty shall be deemed to be a public vessel of the United States, and within the meaning of section 646 of this title shall be deemed to be a vessel of the Coast Guard.
   14 U.S.C. § 827.

2. In *Feres v. United States,* 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950), the Supreme Court held that the United States "is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to [their military] service." The *Feres* doctrine has been found to be equally applicable to actions brought pursuant to the Public Vessels Act, 46 U.S.C. § 781–90. *Charland v. United States,* 615 F.2d 508 (9th Cir. 1980); *Beaucoud-*

*ray v. United States,* 490 F.2d 86 (5th Cir. 1974).

It is undisputed that at the time he sustained his injuries, Thomas Cusanelli was on active duty with the Coast Guard. It was in his capacity as a serviceman, that he participated in the rescue of the El Mar. The *Feres* doctrine would thus bar Mr. Cusanelli from proceeding against the United States in this action.

3. Section 745 of Title 46 of the United States Code provides in pertinent part: "Suits as authorized by this chapter may be brought only within two years after the cause of action arises:" 46 U.S.C. § 745. Mr. Cusanelli sustained his injury on May 27, 1978 but filed this action more than two years later, on November 3, 1980.

4. *See* note 2, *supra.*

precipitating the rescue attempt by the crew of the vessel on which Thomas Cusanelli was serving.

Mr. Cusanelli argues that when Mr. Klaver received permission to return to his home port he ceased functioning as a member of the Auxiliary. Looking to principles underlying the doctrine of respondeat superior, he states that since Mr. Klaver was no longer acting within the scope of his employment as an auxiliarist, his negligence cannot be imputed to the United States.

In *Lundberg v. State of New York*, 25 N.Y.2d 467, 306 N.Y.S.2d 947, 255 N.E.2d 177 (1969), the New York State Court of Appeals stated:

An employee acts in the scope of his employment when he is doing something in furtherance of the duties he owes to his employer and where the employer is, or could be, exercising some control, directly or indirectly, over the employee's activities.

*Id.* at 470, 306 N.Y.S.2d at 950, 255 N.E.2d at 180.

That case supports and illustrates the general rule that "an employee driving to and from work is not acting in the scope of his employment.... Although such activity is work motivated, the element of control is lacking." *Id.* at 471, 306 N.Y.S.2d at 950, 255 N.E.2d at 180 (citations omitted); *see also, Johnson v. Daily News, Inc.*, 34 N.Y.2d 33, 356 N.Y.S.2d 1, 312 N.E.2d 148 (1974).

Mr. Cusanelli would have us analogize this case to *Lundberg* and find that during the time Mr. Klaver was heading home from the patrol area he was in effect "driving ... from work" and within the general rule.[5] But as the Court in *Lundberg* sets out, there is an "exception to this rule .... that an employee who uses his car in furtherance of his work is acting in the scope

of his employment while driving home from his last business appointment, since such a person is working, and is under his employer's control, from the time he leaves the house in the morning until he returns at night." 25 N.Y.2d at 471, 306 N.Y.S.2d at 950, 255 N.E.2d at 180. *See also, Shauntz v. Schwegler Bros.*, 259 A.D. 446, 20 N.Y.S.2d 198 (4th Dep't 1940); *Berger v. Burlin & Jones, Inc.*, 43 A.D.2d 528, 349 N.Y.S.2d 1 (1st Dep't 1973); *Rappaport v. International Playtex Corp.*, 43 A.D.2d 393, 352 N.Y. S.2d 241 (3d Dep't 1974).

We think that the circumstances of this case are such that it falls well within the exception and not within the general rule. Mr. Klaver did not use the El Mar merely to get to his Auxiliary post. The El Mar itself was the locus of his service as an auxiliarist and during the entire course of its use on the day of Mr. Cusanelli's injury it sported the insignia of the Auxiliary (as did Mr. Klaver). The use of the vessel was nothing if not incident to Mr. Klaver's employment as an auxiliarist.

Mr. Cusanelli argues nevertheless that once Mr. Klaver received permission to leave his patrol, the Coast Guard ceased exercising any control over him and the El Mar. He cites a Coast Guard Auxiliary regulation that gives an

"auxiliarist-master ... the sole responsibility for the safety of his vessel and of the crew. If in his considered judgment [a] directed operation is not within the capabilities of his vessel, or if he concludes that such movement would hazard his vessel, he may decline the direction. The Coast Guard does not possess authority to take over command of the vessel or to compel the auxiliarist to comply with this request."

**5.** If an analogy is to be drawn to motor vehicles, a more appropriate analogy would be to a delivery truck or a patrol car being used by the driver in the course of his employment for its designated purpose, during which time the vehicle breaks down, the driver must cease delivery or patrol as the case may be, and return the vehicle to the garage where it had been picked up. Were an accident then to occur during the trip back to the garage and assuming as in this case that there was no "frolic or detour", it seems inconceivable that the doctrine of respondeat superior would not be applied based on the argument that the driver and vehicle were no longer within the scope of the employment relationship and under the employer's control.

Coast Guard Auxiliary Manual, Chap. III, Pt. 2, C.G.–305 (1968). Thus, he reasons, Mr. Klaver was at most "on call"; an insufficient basis upon which to find a master-servant relationship. *See Ehlenfield v. State*, 62 A.D.2d 1151, 404 N.Y.S.2d 175 (4th Dep't 1978).

We do not read the Coast Guard regulation as negating the existence of control by the Coast Guard over members of the Auxiliary. Auxiliarists should not be required unnecessarily to risk life, limb, and vessel, nor should the Auxiliary necessarily be given the power to force them to do so in order to show that the Auxiliary "exercise some control, directly or indirectly, over the [auxiliarist's] activities." *Lundberg v. State of New York, supra.*

There is no question here but that the El Mar's use on this day was within the scope of Mr. Klaver's employment and that its location at any given time, including at the time of this accident was incident to its use as an Auxiliary vessel. The Coast Guard itself recognized this by assuming financial responsibility for all damage to the El Mar on that day.[6]

Thus, we find that at the time of Mr. Cusanelli's injury, the El Mar was a public vessel and that the proper party defendant here was and is the United States against which no action lies. (*See* notes 2 and 3, *supra*). Therefore, the motion to remand insofar as it is based on Mr. Cusanelli's claim that the United States is not a proper defendant is denied.[7]

This action was originally brought in New York State Supreme Court. That court did not have jurisdiction over the United States. Federal court jurisdiction upon removal is "derivative" and a Federal court cannot acquire jurisdiction if it was lacking in the State court. *Lambert Run Coal Co. v. Baltimore & O. R. Co.*, 258 U.S. 377, 382, 42 S.Ct. 349, 351, 66 L.Ed. 671 (1922); *Armstrong v. Alabama Power Co.*, 667 F.2d 1385, 1387 (11th Cir. 1982); *Friedr. Zoellner (New York) Corp. v. Tex Metals Co.*, 396 F.2d 300, 301 (2d Cir. 1968); *Billy Jack, Etc. v. New York Coat, Suit, Etc.*, 511 F.Supp. 1180, 1188 (S.D.N.Y.1981).

In light of the foregoing, the complaint as against Mr. Klaver (and the United States) is hereby dismissed.[8] The balance of the case is remanded to the New York State Supreme Court.

SO ORDERED.

6. Mr. Cusanelli argues that the Coast Guard's insurance arrangement with Mr. Klaver is not binding on him as to the existence of a master-servant relationship. While it is in no way dispositive of the question, it is some evidence of the Coast Guard's and the auxiliarist's understanding of the scope of the employment relationship and thus of some value in determining this question.

7. As noted earlier in this opinion, Section 745 of Title 46 of the United States Code prohibits maintenance of this action against Mr. Klaver.

*See Smith v. United States*, 346 F.2d 449 (4th Cir.), *cert. denied*, 382 U.S. 878, 86 S.Ct. 163, 15 L.Ed.2d 119 (1965); *Carter v. American Export Isbrandtsen Lines, Inc.*, 411 F.2d 1185 (2d Cir. 1969); *Doyle v. Bethlehem Steel Corp.*, 504 F.2d 911 (5th Cir. 1974).

8. Even if this case had been properly brought against the United States in Federal Court, we would still be required to dismiss it for the reasons set forth in notes 2 and 3, *supra*.