**Roger JUSTICE, Plaintiff–Appellant,**

**v.**

**UNITED STATES of America, Defendant–Appellee.**

No. 92–2218.

United States Court of Appeals, Eleventh Circuit.

Nov. 15, 1993.

Donald Moses, Leslie H. Morton (Co–Counsel), Jacksonville, FL, for plaintiff-appellant.

Robert M. Dees, Ralph J. Lee, Asst. U.S. Atty., Jacksonville, FL, Thomas L. Jones, Torts Branch, Civil Div., Washington, DC, for defendant-appellee.

Before KRAVITCH and COX, Circuit Judges, and HOBBS *, Senior District Judge.

KRAVITCH, Circuit Judge:

The doctrine of equitable tolling abates the harsh operation of the statute of limitations under certain circumstances in which barring a plaintiff's potentially meritorious action would be unjust. The sole question in this case is whether the statute of limitations for actions brought under the Public Vessels Act, 46 U.S.C.App. §§ 781–90 (1988) (PVA), and the Suits in Admiralty Act, 46 U.S.C.App. §§ 741–52 (1988) (SAA), was tolled by appellant Roger Justice's timely filing of a PVA/SAA action which later was dismissed without prejudice. Justice did not appeal that dismissal. Instead, he chose to refile his lawsuit in the district court. That action the district court dismissed *with* prejudice, because at the time it was commenced the original limitations period had expired.

We hold that equitable tolling is not appropriate under the circumstances of this case. Accordingly, we affirm the district court's order dismissing Justice's action with prejudice.

## I.

The PVA authorizes "[a] libel in personam in admiralty ... against the United States ... for damages caused by a public vessel of the United States." 46 U.S.C.App. § 781.[1] The SAA similarly permits, "[i]n cases where if [a vessel owned by the United States] were privately owned or operated ... a proceeding in admiralty could be maintained, any appropriate nonjury proceeding in personam ... against the United States." *Id.* § 742. Both acts apply when a plaintiff brings a public-vessel-related suit in admiralty against the United States. *See, e.g., Bonanni Ship Supply, Inc. v. United States,* 959 F.2d 1558, 1561 n. 7 (11th Cir.1992); *Marine Coatings of Alabama, Inc. v. United States,* 932 F.2d

---

* Honorable Truman M. Hobbs, Senior U.S. District Judge for the Middle District of Alabama, sitting by designation.

1. Although neither the statute nor case law defines explicitly the term "public vessel," *see Favorite v. Marine Personnel & Provisioning, Inc.,*

955 F.2d 382, 385 (5th Cir.1992), there is little doubt that a government-owned ship qualifies, *see Doyle v. Bethlehem Steel Corp.,* 504 F.2d 911, 912 (5th Cir.1974). The parties do not dispute that the vessel at issue in this case was a public vessel.

1370, 1373 n. 1 (11th Cir.1991). Together they provide a cause of action for damages suffered aboard a public vessel due to negligence committed by the United States or its agents. *See Doyle v. Bethlehem Steel Corp.,* 504 F.2d 911, 912 (5th Cir.1974) (holding that action against government under PVA and SAA was exclusive remedy for worker injured while working aboard tanker owned by the United States).[2]

Justice suffered permanently disabling injuries on or about November 23, 1987, when he fell down a stairway aboard the U.S.N.S. ANTARES. The ANTARES was a public vessel owned by the United States and operated by International Marine Carriers, Inc. (IMC).

On November 14, 1988, Justice instituted a PVA/SAA action in the United States District Court for the Eastern District of Louisiana against both the United States and IMC (the "original action").[3] He alleged that the defendants had acted tortiously in allowing a dog aboard the ANTARES while he was performing ship building and repair services, proximately causing his injuries. For nine months, the litigation proceeded at essentially a normal pace. Counsel exchanged correspondence. Each side propounded discovery requests. The court convened a preliminary pretrial conference. Then, on August 15, 1989, the district court dismissed Justice's claim against IMC.[4] In addition, the court determined that because the ANTARES was located in Jacksonville, Florida when Justice

commenced the action, venue was proper only in that city's federal judicial district. The PVA provides that when the vessel charged with creating the liability is located within the territorial waters of the United States, suits under the act "shall be brought in ... the district in which the vessel ... is found." 46 U.S.C.App. § 782; *see Asociacion de Pescadores de Vieques, Inc. v. United States,* 497 F.Supp. 54, 55 (D.P.R.1979).[5] Accordingly, the court transferred the remainder of the case—Justice's claims against the United States—to the United States District Court for the Middle District of Florida. *See* 28 U.S.C. § 1406.

This transfer to the Middle District sparked a series of events which eventually led to the dismissal of Justice's action. Local district rules mandated that Justice hire local counsel. *See* M.D.Fla.R. 2.02(a)(1). According to Justice, through his Louisiana counsel he first retained one John Rawls, a member of the Florida bar who resided and practiced in Louisiana. Because Mr. Rawls did not live in Florida, however, he did not satisfy the local rule. Louisiana counsel then contacted one Benjamin Henschel. After reviewing the matter for some time, Mr. Henschel declined the representation. Henschel did refer Justice to A. Russell Smith, who agreed to take the case. Mr. Smith finally was enrolled as local counsel pursuant to an order of the United States magistrate judge on February 22, 1990. This was more than

---

**2.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc), we adopted as circuit precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**3.** Justice chose the Louisiana forum ostensibly for four reasons: because he resided there; because his treating physicians, whose testimony would be important to his case, practiced there; because the U.S. Military Sealift Command, the relevant government agency in the case, had a base of operations there; and because the ANTARES previously had been located there.

**4.** The SAA bars admiralty claims against agents of the United States operating public vessels. The act makes an action against the United States the plaintiff's exclusive remedy. 46 U.S.C.App. § 745; *Doyle,* 504 F.2d at 912.

**5.** In contrast to the PVA, the SAA provides that suits under that act "shall be brought in the ...

district in which the parties ... suing, or any of them, reside ... *or* in which the vessel ... charged with liability is found." 46 U.S.C.App. § 742 (emphasis added). Courts have held, however, that when an action is cognizable under both the PVA and the SAA and the relevant portions of the two acts are inconsistent, the more restrictive provisions of the PVA control. *Blevins v. United States,* 769 F.2d 175, 180 n. 2 (4th Cir.1984); *Gillikin v. United States,* 764 F.Supp. 261, 268 (E.D.N.Y.1991); *Asociacion de Pescadores de Vieques,* 497 F.Supp. at 55; *see United States v. United Continental Tuna Corp.,* 425 U.S. 164, 181, 96 S.Ct. 1319, 1329, 47 L.Ed.2d 653 (1976) (holding that claims within scope of the PVA remain subject to its terms notwithstanding amendments to the SAA; holding that PVA's reciprocity requirement applies despite concurrent jurisdiction under SAA).

six months after the transfer of the case to the Middle District of Florida.

In the meantime, on August 22, 1989, shortly after the transfer from the Eastern District of Louisiana, the district court had entered a routine order directing Justice to answer standard written interrogatories within eighty days. The court's deadline passed with the interrogatories unanswered; Justice, during that time, was having the above-described difficulty securing local counsel. As a consequence of Justice's failure to comply with the court's order, the court directed Justice to show cause within twenty days why the case should not be dismissed for want of prosecution. Justice missed this deadline too, although the magistrate judge later granted his motion to deem timely his "Memorandum in Opposition to Rule to Show Cause."

It was not until October 12, 1990—nearly fourteen months after the district court propounded the standard interrogatories, nine months after the court issued the show cause order, and eight months after Justice retained local counsel—that Justice submitted answers to the interrogatories.[6] In view of the lateness of this filing, the government moved to strike Justice's answers. Despite having finally complied with the district court's August 1989 order, Justice did not oppose this motion, which the magistrate judge accordingly granted. *See* M.D.Fla.R. 3.01 ("Each party opposing any written motion ... shall file and serve, within ten days after being served with such motion ... a brief of legal memorandum ... in opposition to the relief requested.").

Justice's original action came formally to a close on February 5, 1991, when the district court overruled his objections to the magistrate judge's order, rejected his request for leave to complete discovery in an untimely matter, and dismissed the case for want of prosecution and failure to comply with an order of the court.[7] For support, the court cited Justice's repeated failures to comply with its orders in a diligent fashion.[8] As is common in such cases, the court directed that judgment be entered dismissing the case *without* prejudice.

Justice could have appealed from the dismissal of his action. *See Robinson v. Federal Nat'l Mortgage Ass'n,* 673 F.2d 1247, 1249 (11th Cir.1982); *infra* Part III–B. Instead, on February 20, 1991—only two weeks after the dismissal without prejudice but more than three years after the accident aboard the ANTARES—Justice commenced a new PVA/SAA action against the United States (the "second action"). The statute of limitations for PVA/SAA actions is two years. 46 U.S.C.App. § 745.

The government moved to dismiss Justice's second action *with* prejudice, in part on the ground that it was barred by the statute of limitations.[9] In opposition to the motion Justice argued that the filing of his original action tolled the statute of limitations and that the second action consequently was brought within the statutory period.[10] In the alternative, Justice asked the district court for relief, pursuant to Fed.R.Civ.P. 60(b),

---

**6.** The further delay after retention of local counsel apparently was caused by miscommunication between Louisiana and Florida counsel.

**7.** Order at 4, *Justice v. United States,* No. 89–702–Civ–J–14 (M.D.Fla. Feb. 5, 1991); *see* Fed. R.Civ.P. 41(b).

**8.** The court wrote, with obvious frustration:

Both this court and Magistrate Judge Schlesinger have afforded the plaintiff and his counsel considerable latitude and accomodation. [sic] Untimely responses have been deemed timely filed, and technical deficiencies have been overlooked. However, there is a limit to both judicial patience and judicial resources.... The Court finds that the plaintiff failed to comply with its Order of August 22, 1989. There-

fore, the Court will grant the Government's Motion for Involuntary Dismissal for Failure to Prosecute and Failure to Comply with Court's Order....

Order at 3–4 (Feb. 5, 1991).

**9.** In addition, the government asserted insufficient service of process. *See* Fed.R.Civ.P. 12(b)(5).

**10.** *See United States v. Ibarra,* —— U.S. ——, —— n. 2, 112 S.Ct. 4, 5 n. 2, 116 L.Ed.2d 1 (1991) (holding that when time bar is suspended because of equitable tolling and begins to run upon happening of subsequent events, time remaining is calculated by subtracting from full limitations period whatever time ran before clock was stopped).

from the dismissal of his original action. He argued that, by dismissing the original complaint *without* prejudice the court expressed an intention not to preclude him from filing a subsequent action. If the practical consequence of the dismissal without prejudice was going to be a dismissal *with* prejudice, he urged, the court should vacate the previous judgment and proceed with the original case.

The district court denied Justice's Rule 60(b) request on the ground that it was not filed within a "reasonable time," as required by the rule.[11] As with the dismissal of his original action, Justice did not appeal from this ruling. Later, the court granted the government's motion to dismiss. The court rejected Justice's assertion that his original action tolled the running of the statute of limitations. On the contrary, it concluded, "[a]llowing this suit to continue would undermine the very purpose of the SAA statute of limitations." [12]

■ Justice appeals the dismissal of his second action. Whether the doctrine of equitable tolling saves a cause of action otherwise barred by the statute of limitations is a question of law which we consider *de novo*. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1531 (11th Cir.1992). Of course, we defer to the district court's findings of fact unless they are clearly erroneous. *Id.*

## II.

■ A threshold question in this case is whether equitable tolling ever is available in suits brought pursuant to the Public Vessels and Suits in Admiralty Acts. The government takes the position that because the acts waive federal sovereign immunity, courts should construe their time-bar provisions strictly against all plaintiffs. Although we do not doubt the validity of the general proposition that immunity-waiving statutes should be construed narrowly, *e.g.*, *McMahon v. United States*, 342 U.S. 25, 27, 72 S.Ct. 17, 19, 96 L.Ed. 26 (1951), this court's controlling precedent forecloses the government's argument on this point. *See Raziano v. United States*, 999 F.2d 1539, 1541 (11th Cir.1993); *McCormick v. United States*, 680 F.2d 345, 347 (5th Cir.1982).[13] Equitable tolling is potentially available in PVA/SAA cases.

## III.

■ The remaining question is whether equitable tolling is warranted here. In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (1982), we rejected a plaintiff's contention that "the period of limitations was tolled by the filing of his initial suit ... despite the fact that the district court subsequently dismissed this action for failure to prosecute." *Id.* at 33–34. "The fact that dismissal of an earlier suit was without prejudice," we held, "does not authorize a subsequent suit brought outside of the otherwise binding period of limitations." *Id.* at 34. Justice acknowledges, as he must, that *Stein* announces at least a general rule that the filing of a lawsuit which later is dismissed without

---

**11.** The rule provides in pertinent part:

The motion shall be made within a reasonable time, and for reason[ ] (1) [mistake, inadvertence, surprise, or excusable neglect] ... not more than one year after the judgment, order, or proceeding was entered or taken.

Fed.R.Civ.P. 60(b). Justice filed his 60(b) motion more than eight months after the dismissal of his original action. Although this was within the rule's one-year absolute maximum, the district court found it unreasonably late under the circumstances.

**12.** R. 1–31 at 7.

**13.** Although *McCormick* was rendered in June 1982, it was a former-Fifth Circuit case and, as such, is binding on panels of this court. *See* Fifth Circuit Court of Appeals Reorganization Act

of 1980, Pub.L. 96–452, § 9(3), 94 Stat.1994, 1995 (1980).

*McCormick* is consistent with the Supreme Court's recent pronouncements on the applicability of the tolling doctrine in suits against the federal government. In *Irwin v. Veterans Administration*, 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), the Court held that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States. Congress, of course, may provide otherwise if it wishes to do so." *Id.* at 95–96, 111 S.Ct. at 457. Congress has not so provided with respect to suits under the Public Vessels and Suits in Admiralty Acts. Hence, the statute of limitations in admiralty suits against the United States may be tolled in appropriate circumstances. *See Raziano*, 999 F.2d at 1541.

prejudice does not automatically toll the statute of limitations. Nevertheless, he argues that tolling is merited by the particular circumstances of this case—namely that the district court dismissed his original, timely-filed action solely as a result of excusable delays in complying with the court's discovery orders, those orders being prompted by the transfer of the case, at the government's request, from Louisiana to Florida. We disagree that tolling is compelled by these facts. Justice's failure to prosecute his action with due diligence and the availability to him of adequate remedies at law preclude an award of equitable relief in this case.

## A.

Whenever delay occurs in the institution or prosecution of a lawsuit, conflicting concerns arise regarding the fairness of continuing the proceedings. On the one hand, statutes of limitations protect defendants,

> "promot[ing] justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." Moreover, the courts ought to be relieved of the burden of trying stale claims when a plaintiff has slept on his rights.

*Burnett v. New York Central R. Co.*, 380 U.S. 424, 428, 85 S.Ct. 1050, 1054, 13 L.Ed.2d 941 (1965) (quoting *Order of Railroad Telegraphers v. Railway Express Agency*, 321 U.S. 342, 348–49, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944)) (citation omitted). On the other hand, these concerns may be outweighed when the interests of justice require that a plaintiff's rights be vindicated. *Id.* at 428, 85 S.Ct. at 1055; *see* David D. Doran, Comment, *Equitable Tolling of Statutory Benefit Time Limitations: A Congressional Intent Analysis*, 64 Wash.L.Rev. 681, 682 (1989) ("Equitable tolling, like all equitable remedies, emerged as the 'equity courts' response to injustices resulting from decisions of the 'law

courts' in cases involving inequitable conduct."). Thus, courts, acting in their equitable capacity, will toll statutes of limitations, but "only upon finding an inequitable event that prevented plaintiff's timely action." Doran, Comment, 64 Wash.L.Rev. at 682. The burden is on the plaintiff to show that equitable tolling is warranted. *Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 661 (11th Cir. 1993).

The interests of justice are most often aligned with the plaintiff when the defendant misleads her into allowing the statutory period to lapse, *see Irwin v. Veterans Administration*, 498 U.S. 89, 96, 111 S.Ct. 453, 458, 112 L.Ed.2d 435 (1990); *Burnett*, 380 U.S. at 428, 85 S.Ct. at 1055; when she has no reasonable way of discovering the wrong perpetrated against her, *see, e.g., McBrayer v. City of Marietta*, 967 F.2d 546, 547 (11th Cir.1992); or when she timely files a technically defective pleading and in all other respects acts with " 'the proper diligence ... which ... statutes of limitation were intended to insure,' " *Burnett*, 380 U.S. at 430, 85 S.Ct. at 1056 (quoting *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467, 82 S.Ct. 913, 916, 8 L.Ed.2d 39 (1962)); *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1161 (11th Cir.1993). The interests of justice side with the defendant when the plaintiff does not file her action in a timely fashion despite knowing or being in a position reasonably to know that the limitations period is running, *see, e.g., First Alabama Bank v. United States*, 981 F.2d 1226, 1228 (11th Cir.1993); *Ross*, 980 F.2d at 661–62; and, of course, when she fails to act with due diligence, *see, e.g., Irwin*, 498 U.S. at 96, 111 S.Ct. at 458; *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 151, 104 S.Ct. 1723, 1725, 80 L.Ed.2d 196 (1984); *Raziano*, 999 F.2d at 1541; *Hill v. Texaco, Inc.*, 825 F.2d 333, 335 (11th Cir. 1987). It bears emphasizing, however, that due diligence on the part of the plaintiff, though necessary, is not sufficient to prevail on the issue of equitable tolling. The Supreme Court has made clear that tolling is an extraordinary remedy which should be extended only sparingly. *Irwin*, 498 U.S. at 96, 111 S.Ct. at 457–58. Though his dereliction be only incidental, a generally diligent plain-

tiff who files late because of his own negligence typically may not invoke equity to avoid the statute of limitations. "Principles of equitable tolling ... do not extend to what is at best a garden variety claim of excusable neglect." *Id.* at 96, 111 S.Ct. at 458.

■ Justice has not shown that he exercised due diligence in prosecuting his lawsuit. To the contrary, his lack of diligence is precisely why the district court dismissed his original action. He did not answer the district court's standard interrogatories until fourteen months after the order propounding them was entered. Even discounting the time during which he had difficulty securing local counsel, the fact remains that although Justice retained counsel in February 1990, he did not answer the interrogatories until October of that year. No requests for extensions of time were made. Other court deadlines were ignored or overlooked. "One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence." *Baldwin County Welcome Center,* 466 U.S. at 151–52, 104 S.Ct. at 1726. Thus, Justice is not entitled to equitable relief. To the extent his lack of diligence is attributable to counsel's excusable neglect in failing to comply with the district court's orders, we believe that was the type of "garden variety" neglect which the Supreme Court in *Irwin* expressly rejected as a basis for equitable tolling. 498 U.S. at 96, 111 S.Ct. at 458.

Justice argues that he acted with due diligence through much of the litigation, the events leading to the original dismissal being an isolated set of occurrences "primarily caused by unforeseeable logistical difficulties arising from the sudden and unexpected transfer of the case to the Middle District of Florida." Appellant's Initial Brief at 26. He points to the fact that he filed his original action well within the two-year limitations period and litigated the case well into the discovery stage for nine months prior to the transfer. Because the events leading to the dismissal of his original action occurred in the aftermath of the transfer of venue, he likens this case to *Burnett v. New York Central R. Co.,* in which the Supreme Court held equitable tolling would apply when the district court dismissed a timely filed action

for improper venue and the plaintiff commenced a new action within eight days of dismissal but after the expiration of the statute of limitations. *See* 380 U.S. at 430, 85 S.Ct. at 1055.

But the fact that Justice assiduously prosecuted the case prior to transfer does not refute the fact that for months thereafter he missed court-imposed deadlines, failed to complete discovery, and otherwise ignored or neglected orders of the district court. To qualify for relief in equity a party must act with diligence throughout the litigation. This is not a case like *Burnett* in which the plaintiff's only error was bringing his case in the wrong venue. Although the dismissal of Justice's original action likely would not have occurred but for the transfer to the Middle District of Florida, the dismissal was *not* for improper venue—a technical pleading error—but for want of prosecution and failure to comply with a court order. Notwithstanding that he erroneously filed his action in Louisiana, Justice could have prosecuted his action, once transferred to the Middle District of Florida, with due dispatch.

## B.

■ Justice also had alternate ways of preserving his cause of action short of invoking the doctrine of equitable tolling. In reaching a decision on equitable tolling, we may apply traditional principles of equity jurisprudence. *Greyhound Corp. v. Mt. Hood Stages, Inc.,* 437 U.S. 322, 339, 98 S.Ct. 2370, 2379, 57 L.Ed.2d 239 (1978) (Burger, C.J., concurring). It is a longstanding maxim of Anglo–American law that relief in equity generally is inappropriate when the moving party has an adequate remedy at law. *See, e.g., Morales v. Trans World Airlines, Inc.,* —— U.S. ——, ——, 112 S.Ct. 2031, 2035, 119 L.Ed.2d 157 (1992); *Younger v. Harris,* 401 U.S. 37, 43–44, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971); *Thompson v. Allen County,* 115 U.S. 550, 553, 6 S.Ct. 140, 141–42, 29 L.Ed. 472 (1885); 1 John Norton Pomeroy, *Equity Jurisprudence* § 220, at 373 (Spencer W. Symons ed., 5th ed. 1941).

Justice could have pursued several legal avenues after the dismissal of his original action. First, he could have filed a timely

motion for reconsideration. *See, e.g., Taylor Woodrow Constr. Corp. v. Sarasota/Manatee Airport Auth.,* 814 F.Supp. 1072, 1072 (M.D.Fla.1993); *Gerber v. Longboat Harbour N. Condominium, Inc.,* 757 F.Supp. 1339, 1340 (M.D.Fla.1991). In that motion he could have alerted the district court that because the statute of limitations had expired, the dismissal without prejudice would operate as a dismissal with prejudice. As such, he could have argued, dismissal was improper, given that the events which led to the dismissal reflected mere negligence, and not willful contempt. *See infra* note 15 and accompanying text.

Alternatively, Justice could have presented this argument in a timely motion for relief from judgment. *See* Fed.R.Civ.P. 60(b). Justice, indeed, filed such a motion after the government moved to dismiss his second action as time-barred. The district court ruled that the motion was untimely, coming as it did more than eight months after the dismissal of the original action. Justice never appealed from that ruling.

Finally, Justice could have appealed the dismissal of his original action. A plaintiff may appeal from an involuntary dismissal without prejudice. *Robinson,* 673 F.2d at 1249; *accord United States v. Wallace & Tiernan Co.,* 336 U.S. 793, 794 n. 1, 69 S.Ct. 824, 825 n. 1, 93 L.Ed. 1042 (1949); *Drake v. Southwestern Bell Tel. Co.,* 553 F.2d 1185, 1186 (8th Cir.1977); 9 Wright & Miller, *Federal Practice & Procedure* § 2376, at 251 (1971) ("A dismissal is a final order, and appealable as such, whether it is with or without prejudice."). The right to appeal generally is regarded an adequate legal remedy which forecloses equitable relief. *See In re Nineteen Barges,* 263 U.S. 389, 393, 44 S.Ct. 130, 132, 68 L.Ed. 351 (1923) (holding that right of review by appeal precluded grant of writ of prohibition); *Hilton Internat'l Co. v. Union de Trabajadores de la Industria Gastronomica,* 833 F.2d 10, 11 (1st Cir.1987).

In *Hilton Internat'l* the district court dismissed the plaintiff's action without prejudice for failure to comply with a discovery order. The plaintiff moved for reconsideration. The district court denied the motion, although in language which the court of appeals characterized as "[c]onceivably ... ambiguous." *Id.* The plaintiff neither sought clarification of the district court's ambiguous language nor appealed the dismissal of its action. Instead, like Justice, it brought a new action, and was met by a plea of the statute of limitations. Rejecting the plaintiff's contention that the statute of limitations had been tolled by the filing of the original action, the district court dismissed the second action and the plaintiff appealed. *Id.* at 10.

The First Circuit held that "dismissal by the court for punitive or other reasons, even though labelled 'without prejudice,' is, in fact, with prejudice if the statute of limitations has run." *Id.* at 11 (citations omitted). "[P]laintiff's remedy," therefore, "was to go back for a revision [of the conceivably ambiguous language in the court's order denying reconsideration], or, at least, appeal. It was too late for plaintiff to complain in a new action." *Id.* (citation omitted). The same may be said in this case.

Had Justice appealed from the original judgment of dismissal or moved in a timely fashion for reconsideration or relief from that dismissal he likely would have been successful. We previously have held that cutting off a plaintiff's potentially meritorious action is an unduly harsh sanction for failure to prosecute or to comply with a court order, absent willful or contumacious conduct. *McKelvey v. AT & T Technologies, Inc.,* 789 F.2d 1518, 1520 (11th Cir.1986); *Burden v. Yates,* 644 F.2d 503, 505 (5th Cir. Unit B 1981).[14] Thus, in both *McKelvey* and *Burden* we reversed a dismissal without prejudice which was entered after the expiration of the limitations period because the plaintiff's failure to comply with a court order was "more a matter of negligence than purposeful delay." *Burden,*

---

14. Decisions rendered by a Unit B panel of the former Fifth Circuit are circuit precedent in the Eleventh Circuit. *Stein,* 667 F.2d at 34.

644 F.2d at 505; *see McKelvey,* 789 F.2d at 1519.[15]

Justice's failure to prosecute his original action likewise appears to have been the result of excusable neglect and not recalcitrance. As a consequence, the original dismissal likely would have been set aside—had it properly been challenged. Justice had an adequate remedy at law.[16]

Justice argues that cases like *McKelvey* and *Burden* demonstrate the inequity of the dismissal in this case because they stand for the proposition that dismissal with prejudice is too severe a sanction absent willful or otherwise egregious misconduct. A crucial distinction exists, however, between those cases and the present one. In those cases the plaintiff appealed from the dismissal. Hence, the court was confronted solely with the question whether the district court erred in dismissing the case with prejudice (explicitly or in effect). By contrast, here our inquiry is not the propriety of the original dismissal per se, but whether equity is the proper vehicle for relief. Equity's reach is quite modest when adequate legal remedies are available.

Justice was represented by counsel and could have determined that several legal channels were open to preserve his cause of action. *See Townsend v. Director, Office of Workers' Compensation,* 743 F.2d 880, 881 (11th Cir.1984). At the time of the original dismissal the law was settled in this circuit that filing an action generally does not toll the statute of limitations when that action is dismissed for failure to prosecute after the statute's expiration, *see Stein,* 667 F.2d at 34; that a dismissal without prejudice is ripe for

appeal, *see Robinson,* 673 F.2d at 1249; and that dismissal after the expiration of the limitations period is inappropriate absent a finding of purposeful misconduct, *see Burden,* 644 F.2d at 505. To the extent Justice will suffer irreparable harm if equitable tolling does not apply in this case, that is the consequence of his own failure to pursue his remedies at law. Equity will not intervene in such circumstances. *Commissioner v. Shapiro,* 424 U.S. 614, 634 n. 15, 96 S.Ct. 1062, 1074 n. 15, 47 L.Ed.2d 278 (1976); *United States v. Central Livestock Corp.,* 616 F.Supp. 629, 633 (D.Kan.1985); *Smaldone v. Kurtz,* 450 F.Supp. 1138, 1140 (D.D.C.1978).

### C.

█ Justice further asserts that equitable tolling should be allowed because the purpose of repose underlying the statute of limitations would not be furthered by application of the statute in these circumstances. The government, after all, was well aware within a year after the accident that Justice was charging it with the legal responsibility for his injuries.

The statute of limitations, however, also is designed to prevent the litigation of stale claims—claims as to which the defense may be hampered because of passage of time, lost evidence, faded memories, or disappearing witnesses—regardless of the defendant's awareness that it is being sued. *E.g., Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 473, 95 S.Ct. 1716, 1726, 44 L.Ed.2d 295 (1975). Furthermore, courts may not ignore the statute of limitations simply because they opine that a given action is not

---

**15.** We explained that because such an order "has the effect of precluding [plaintiff] from refiling his claim due to the running of the statute of limitations ... [t]he dismissal [is] tantamount to a dismissal with prejudice." *Burden,* 644 F.2d at 505; *see Hilton Internat'l,* 833 F.2d at 11. Dismissal with prejudice is " 'a drastic remedy to be used only in those situations where a lesser sanction would not better serve the interests of justice.' " *Burden,* 644 F.2d at 505 (quoting *Brown v. Thompson,* 430 F.2d 1214, 1216 (5th Cir. 1970)); *accord Kilgo v. Ricks,* 983 F.2d 189, 192 (11th Cir.1993); *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Devel. Corp.,* 711 F.2d 989, 998 (11th Cir.1983). It is a sanction of last resort, "proper only where there is 'a clear record of delay or willful contempt.' "

*Cohen v. Carnival Cruise Lines, Inc.,* 782 F.2d 923, 924 (11th Cir.1986) (quoting *Goforth v. Owens,* 766 F.2d 1533, 1535 (11th Cir.1985)).

**16.** This is not to say that a legal remedy must succeed to be adequate. The law is plain that inadequacy means only that "in its nature or character it is not fitted or adapted to the end in view"; inadequacy does not mean that the remedy is ineffectual. *Thompson,* 115 U.S. at 554, 6 S.Ct. at 142; *International Harvester Credit Corp. v. Hill,* 496 F.Supp. 329, 337 (M.D.Tenn.1979) (as amended 1980). That the legal remedies available to Justice probably would have been successful merely underscores the adequacy of those remedies in this case.

stale or that a particular defendant's repose already has been broken.

> Statutes of limitations find their justification in necessity and convenience rather than in logic. They represent expedients, rather than principles.... They are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the avoidable and unavoidable delay. They have come into the law not through judicial process but through legislation.

*Chase Securities Corp. v. Donaldson,* 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628 (1945) (citation omitted). Accordingly, "they must be strictly adhered to by the judiciary." *Kavanagh v. Noble,* 332 U.S. 535, 539, 68 S.Ct. 235, 237, 92 L.Ed. 150 (1948). Because Justice does not otherwise qualify for equitable tolling, allowing tolling simply because we believe the government's repose already has been broken would be tantamount to holding that the statute need not strictly be applied. This, the law is clear, we may not do.

## IV.

We are sympathetic to the plight of Mr. Justice, a seriously injured worker who has not had his day in court on the merits of his case. Our sympathy, we are aware, is for him small consolation. Nevertheless, as we recently noted, the Supreme Court has instructed that

> [p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of ... sympathy for particular litigants.... [[I]]n the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.

*Baldwin County Welcome Center,* 466 U.S. at 151–52, 104 S.Ct. at 1726, *quoted in Raziano,* 999 F.2d at 1542.

Justice failed to act with due diligence in pursuing his cause of action against the government. He then neglected to avail himself of adequate legal remedies to save his cause of action. Equity will not disturb the hold-

ings of the district court under these circumstances.

The judgment of the district court is AFFIRMED.