**Jeffrey MURPHREE, Plaintiff–Appellant,**

v.

**COMMISSIONER, Social Security Administration, Defendant–Appellee.**

**No. 15–11737**
**Non–Argument Calendar.**

United States Court of Appeals, Eleventh Circuit.

March 3, 2016.

---

Ralph Kenneth Strawn, Jr., Strawn & Robertson, LLC, Gadsden, AL, for Plaintiff–Appellant.

Christopher Gene Harris, Natalie Liem, Mary Ann Sloan, John C. Stoner, Dennis Robert Williams, Selisa McKay Wright, Social Security Administration Office of the General Counsel, Atlanta, GA, Edward Quincy Ragland, Jenny Lynn Smith, Lane H. Woodke, U.S. Attorney's Office, Birmingham, AL, for Defendant–Appellee.

Before WILLIAM PRYOR, ROSENBAUM, and FAY, Circuit Judges.

PER CURIAM:

Jeffrey Murphree, who is white, appeals from the district court's grant of summary judgment in favor of the Social Security Administration (the "Agency") in his employment-discrimination and retaliation lawsuit filed pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16. Murphree is long-term employee with the Agency who, at the time of the events giving rise to this case, was a District Manager based in a field office in Gadsden, Alabama. In his complaint, Murphree alleged that he was not promoted to a Deputy Area Director ("DAD") position in Alabama on the basis of his race and that he was retaliated against

when he complained of such discrimination. He also alleged that he was discriminated and retaliated against when he was not considered for an opening for a DAD position in Tennessee. The district court found that Murphree failed to exhaust his administrative remedies with regard to the Alabama DAD position and that the Agency was entitled to summary judgment on the merits of the rest of his claims. After careful review of the record and the parties' briefs, we affirm.

## I.

We review *de novo* a district court's order granting summary judgment, viewing the evidence and drawing all reasonable inferences in favor of the nonmoving party. *Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1161–62 (11th Cir.2006). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine factual dispute exists if a jury could return a verdict for the nonmoving party. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1085 (11th Cir.2004). We may affirm the district court's summary-judgment decision on any basis supported by the record, even if that basis was not relied upon by the district court. *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir.2013).

## II.

■ Murphree first argues that the district court erred in finding that he did not timely exhaust his administrative remedies for his race-discrimination claim based on his non-selection for the Alabama DAD position. The district court determined that Murphree had failed to initiate contact with an Equal Employment Opportunity ("EEO") Counselor within 45 days as

required by federal regulations, and that Murphree was not entitled to equitable tolling.

A federal employee must pursue and exhaust his administrative remedies before bringing suit in federal court under Title VII. *See Shiver v. Chertoff,* 549 F.3d 1342, 1344 (11th Cir.2008); 29 C.F.R. § 1614.105(a)(1). To exhaust his remedies, a federal employee "must initiate contact with [an EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). "Generally, when the claimant does not initiate contact within the 45–day charging period, the claim is barred for failure to exhaust administrative remedies." *Shiver,* 549 F.3d at 1344. The administrative deadlines are not jurisdictional prerequisites, however, and they are subject to equitable tolling. *Ross v. Buckeye Cellulose Corp.,* 980 F.2d 648, 660 (11th Cir. 1993); 29 C.F.R. § 1614.604(c). *But see Crawford v. Babbitt,* 186 F.3d 1322, 1326 (11th Cir.1999) ("A federal employee must pursue and exhaust her administrative remedies as a jurisdictional prerequisite to filing a Title VII action").

Here, Murphree admits that he did not seek formal EEO counseling until March 28, 2008, which was well over 45 days after the alleged discriminatory action on December 7, 2007. *See* 29 C.F.R. § 1614.105(a)(1). Instead, Murphree claims that he satisfied the 45–day requirement because, within a week of his non-selection, he complained to Rose Mary Buehler and Claudia Harris that he felt he was not selected for the Alabama DAD position because of his race. Buehler was the Area Director and Murphree's primary supervisor. Harris was an acting DAD who at times assisted Buehler with supervision. Murphree contends that both

Buehler and Harris were agency officials logically connected with the EEO process under the Ninth Circuit's decision in *Kraus v. Presidio Trust Facilities Division*, 572 F.3d 1039, 1044–45 (9th Cir. 2009).

The EEO Commission ("EEOC") has held that "in order to establish EEO counselor contact, an individual must contact an agency official logically connected to the EEO process and exhibit an intent to begin the EEO process." *Duke v. Slater*, EEOC Dec. 01A02129, 2000 WL 732027, at *1 (E.E.O.C. May 22, 2000). In *Kraus*, the Ninth Circuit held that an "EEO Officer" of a federal employer was an agency official logically connected with the EEO process even though she did not have the title "Counselor." 572 F.3d at 1044–45. According to *Kraus*, the EEOC understands agency officials "logically connected with the EEO process" to encompass EEO personnel with titles other than "counselor," such as EEO officers, as well as certain officials who are not EEO personnel, such as directors within the agency's office of civil rights. *Id.* at 1045; *accord Culpepper v. Schafer*, 548 F.3d 1119, 1122–23 (8th Cir.2008) (U.S. Department of Agriculture employee's letter to the director of that agency's Office of Civil Rights satisfied administrative exhaustion).

However, "neither internal appeals[ ] nor informal efforts to challenge an agency's adverse action" amount to initiating contact with an EEO Counselor. *See Penn v. Geren*, EEOC Dec. 0120082927, 2008 WL 5479277, at *2 (E.E.O.C. Dec. 10, 2008) (stating that these actions do not toll the time to contact an EEO Counselor); *see also Johnson v. Henderson*, 314 F.3d 409, 415 (9th Cir.2002) ("[T]here is no basis in law to suggest that an employee's complaints to her supervisors satisfy the requirement that the aggrieved employee seek EEO counseling prior to filing a formal complaint or suing in court.").

Here, the district court did not err in concluding that Murphree failed to exhaust his administrative remedies. Murphree's reliance on *Kraus* is unavailing, even if it were binding, which, of course, it is not. Buehler and Harris were managers within the Agency, not EEO personnel or officials in an office of civil rights or equivalent position. Even under *Kraus*, informal complaints to supervisors about discrimination do not amount to initiating contact with an EEO counselor. *See Kraus*, 572 F.3d at 1046 n. 8 (citing *Johnson*, 314 F.3d at 412–15). While Buehler and Harris may have had a general duty to respond to and address employee complaints about discrimination, in addition to their numerous other work responsibilities, that does not mean they were officials "logically connected to the EEO process" in the Agency. *Cf. Klugel v. Small*, EEOC Dec. 0120064105, 2006 WL 3473823, at *2 (E.E.O.C. Nov. 21, 2006) ("An administrative officer is not 'logically connected to the EEO process' as they would administer many office/agency-wide directives and policies.").

■ The district court also found that Murphree did not exhibit an intent to begin the EEO process during his communications with Buehler and Harris. The only arguable reference Murphree makes to this finding is his assertion, buried within his argument regarding Buehler's and Harris's connection to the EEO process, that he "said enough to Buehler and Harris about race discrimination [regarding his non-selection] that they knew this required an EEO investigation." Such a passing reference is insufficient to raise the issue for appellate review. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 682 (11th Cir.2014). In any case, whether Buehler and Harris believed, or should

have believed, that an EEO investigation was warranted does not demonstrate that Murphree exhibited an intent to pursue the EEO process.

Finally, the district court did not err in concluding that Murphree was not entitled to equitable tolling. Tolling of a limitations period on equitable grounds is "an extraordinary remedy which should be extended only sparingly." *Justice v. United States*, 6 F.3d 1474, 1479 (11th Cir.1993). The plaintiff bears the burden of showing that equitable tolling is warranted. *Id.* In general, the plaintiff must show that, despite exercising due diligence, an inequitable event prevented him from complying with the time limit. *See id.* at 1479–80; *see also Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 457–58, 112 L.Ed.2d 435 (1990).

■ Here, Murphree has not shown a basis for equitable tolling. Murphree claims that he is entitled to equitable tolling because Buehler discouraged him from pursing an EEO complaint by telling him to "just let it go" and saying that he could not win against the Regional Commissioner, Paul Barnes, who allegedly made the discriminatory hiring decision. However, Murphree was a District Manager with training in and knowledge of EEO matters. Nothing about Buehler's comments would have misled Murphree about when or how to start the EEO process or prevented him from going to an EEO counselor. *See Justice*, 6 F.3d at 1479 ("The interests of justice side with the defendant when the plaintiff does not file her action in a timely fashion despite knowing or being in a position reasonably to know that the limitations period is running[.]"). Accordingly, Murphree is not entitled to equitable tolling.

In sum, we affirm the district court's conclusion that Murphree's race-discrimination claim based on his non-selection for the Alabama DAD is barred for failure to exhaust administrative remedies.

## III.

■ Murphree next argues that the district court erred in granting summary judgment on his claim that the Agency retaliated against him for complaining about discrimination with regard to the Alabama DAD position. He contends that he established that the Agency's legitimate, non-discriminatory reasons for suspending him for one day and downgrading his yearly performance award were pretext for retaliation. He also asserts that the district court improperly applied the "but-for" test from *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. ——, ——, 133 S.Ct. 2517, 2534, 186 L.Ed.2d 503 (2013), when evaluating the propriety of summary judgment.

Title VII broadly prohibits an employer from retaliating against an employee for complaining about unlawful discrimination. *See* 42 U.S.C. § 2000e–3(a). While § 2000e–16, which prohibits employment discrimination by the federal government, does not specifically mention retaliation, we have noted that § 2000e–16 was intended "to make Title VII applicable in the federal workplace to the same extent it was already applicable in the non-federal workplace." *Llampallas v. Mini–Circuits, Lab, Inc.*, 163 F.3d 1236, 1243 (11th Cir. 1998).

We generally analyze claims based on circumstantial evidence under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir.2009). Under this framework, the plaintiff must first establish a *prima facie* case of retaliation by showing the following: (1) he engaged in a statutorily protected activity;

(2) he suffered an adverse employment action; and (3) he established a causal link between the protected activity and the adverse action. *Id.* at 1307–08. Once a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Id.* at 1308. The plaintiff then has an opportunity to demonstrate that the defendant's proffered reason was pretext for retaliation. *Id.* Ultimately, Title VII retaliation claims require proof that "[the] protected activity was a but-for cause of the alleged adverse action by the employer." *Nassar*, 133 S.Ct. at 2534.

In evaluating pretext, we ask "whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employee's proffered legitimate reasons were not what actually motivated its conduct." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir.1997) (citation and internal quotation marks omitted). As long as the proffered reason is one that might motivate a reasonable employer, "an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir.2000) (*en banc*).

Assuming *arguendo* Murphree established a *prima facie* case of retaliation at to his one-day suspension and downgraded performance award, he has not shown that the Agency's legitimate, non-discriminatory reasons for these actions were pretext for retaliation. The Agency articulated the same reasons for both the suspension and the downgrading of the award: namely, that an investigation team, prompted by an employee complaint of sexual harassment, found that Murphree did not adequately address inappropriate jokes and comments or other conduct issues in his office. For example, the team found it "evident the [District Manager] allowed certain inappropriate behavior/conduct to occur by not immediately addressing issues/problems that permeated throughout" the Gadsden office. The team recommended training in various areas and also made a general recommendation to "consider any additional corrective actions deemed necessary for the management staff" at Murphree's office. Based on the findings of the investigative team's report, Buehler suspended Murphree for one day and reduced his yearly performance award.

Murphree contends that these reasons were unworthy of credence because the investigatory team did not specifically recommend that he be suspended based on its findings, so "it is hard to see how anything besides the training recommended by the team should reasonably be required." He also claims that he was unfairly punished for following the advice of a previous Area Director about how to handle inappropriate workplace comments. These contentions, however, do not show that the team's report was false or that the findings in the report were not the true reason for the employment decisions. *See Combs*, 106 F.3d at 1538. It is not our role to second-guess the wisdom or fairness of the employer's decisions. *See Chapman*, 229 F.3d at 1030.

In sum, Murphree has not rebutted the Agency's stated reasons and shown they were pretextual. Because Murphree's claims fail under the burden-shifting framework established well before *Nassar*, we need not address whether *Nassar* changed our analysis of retaliation claims at summary judgment. Though our reasoning may differ from the district court on these claims, we may affirm for any

adequate reason. *See Feliciano,* 707 F.3d at 1252.

## IV.

Finally, Murphree argues that the district court erred in granting summary judgment on his claims that he was denied the opportunity to compete for the Tennessee DAD position because of racial discrimination and retaliation.

██ Again, assuming *arguendo* that Murphree established a *prima facie* case of discrimination and retaliation with regard to the Tennessee DAD position, he has not demonstrated that the Agency's use of a non-competitive selection process to fill the position was pretext for discrimination or retaliation. Undisputed evidence establishes that the person hired for the Tennessee DAD position, an African–American female, was selected on a non-competitive basis at the request of the Tennessee AD, Liz Clevinger. The person hired had been working as an acting DAD in Tennessee, and Clevinger wanted her to fill the permanent DAD position when it opened up because she was familiar with Tennessee and the two had worked well together. Clevinger's selection was approved by the Regional Commissioner, Paul Barnes.

Even if Murphree is correct that the position should have been filled competitively, he has not shown pretext. *See Springer v. Convergys Customer Mgmt. Grp. Inc.,* 509 F.3d 1344, 1349–50 (11th Cir.2007) ("[E]ven where preselection violates corporate personnel policies, it does not necessarily indicate racial discrimination."). It is undisputed that Clevinger did not know of Murphree or his complaints of discrimination, so she could not have intended to retaliate against him. Nor is there evidence that Clevinger was racially motivated in her selection. The fact that Barnes arguably could have guessed that Murphree may have been interested in the DAD position is wholly insufficient to show that the reason Barnes approved Clevinger's request to fill the position on a non-competitive basis was a pretext for racial discrimination or retaliation against Murphree. Accordingly, the district court properly granted summary judgment on these claims.

## V.

For the reasons stated, the district court properly determined that Murphree's race-discrimination claim with regard to his non-selection for the Alabama DAD position was barred for failure to exhaust administrative remedies, and that summary judgment was appropriate on Murphree's remaining claims of discrimination and retaliation. The judgment of the district court is **AFFIRMED.**