IN THE DISTRICT COURT OF THE UNITED STATES FOR THE 

 MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION 

ANTHONY M. MILNER, ) 
 ) 
 Plaintiff, ) 
 ) CIVIL ACTION NO. 
 v. ) 2:19cv799-MHT 
 ) (WO) 
THE CITY OF MONTGOMERY, ) 
ALABAMA, et al., ) 
 ) 
 Defendants. ) 

 OPINION 

 Plaintiff Anthony M. Milner is a former lieutenant 
of Montgomery Fire/Rescue service, a division of the City 
of Montgomery, Alabama. He filed this lawsuit after he 
was terminated when he became deaf in one ear. He names 
as defendants the City of Montgomery, Montgomery 
Fire/Rescue, and four city officials. He claims that 
they violated the Americans with Disabilities Act (ADA), 
42 U.S.C. §§ 12112, 12203, by failing to make reasonable 
accommodations for his disability and by discharging him 
in retaliation for requesting such accommodations. He 
also brings a separate claim under 42 U.S.C. § 1983 for 
the same alleged violations of the ADA.1 The court has 
jurisdiction under 28 U.S.C. § 1331 (federal question) 

and § 1343 (civil rights). 
 This case is now before the court on defendants’ 
motion to dismiss. Defendants have moved to dismiss (1) 
all claims against Montgomery Fire/Rescue, arguing that 

it is not a government entity distinct from the City of 
Montgomery; (2) three of the four individual defendants, 
on the ground that the individual employees are not 

subject to liability under, presumably, the ADA;2 (3) 

 1. Milner also includes a separate count for 
“injunctive relief.” The court understands this count 
to seek injunctive remedies in addition to the damages 
he requests on his ADA and § 1983 claims. 

 2. Defendants actually seek dismissal of these 
three defendants on the ground that “individual employees 
are not subject to liability under Title VII,” Motion to 
Dismiss (doc. no. 12) at 2. This is, on its face, an odd 
argument because no count of Milner’s complaint is 
brought under Title VII of the Civil Rights Act of 1964, 
as amended, 42 U.S.C. §§ 1981a and 2000e through 
2000e-17. However, the court understands defendants’ 
position on this point to be directed at Milner’s ADA 
claims, as the ADA borrows from Title VII the “powers, 
remedies, and procedures” it employs. 42 U.S.C. 
§ 12117(a). 
 2 
Milner’s ADA claims, for failure to file a timely charge 
of discrimination with the Equal Employment Opportunity 

Commission (EEOC) and failure to allege retaliation in 
his EEOC charge; and (4) Milner’s § 1983 claims, as 
foreclosed by the ADA. For the reasons that follow, the 
motion will be granted, and Milner’s complaint will be 

dismissed. 

 I. FACTUAL BACKGROUND 

 Based on the allegations of the complaint, during 
the period at issue, Milner worked as a lieutenant in the 
Montgomery Fire/Rescue service, a division of the City 

of Montgomery. He was placed on sick leave in July 2017 
for a tumor affecting his hearing. After surgery, he 
lost hearing in his left ear entirely. He requested an 
accommodation for this hearing loss and was refused. 

When a doctor employed by Montgomery Fire/Rescue declined 
to approve his return to work, the city’s mayor signed a 
memorandum, indicating his “decision to dismiss Fire 
Lieutenant A.M. Milner from employment with the 

 3 
Montgomery Fire Department,” effective July 2, 2018. 
Termination Documents (doc. no. 12-2) at 5. Milner was 

given notice of his dismissal on July 5, 2018. See id. 
at 3. Milner appealed his dismissal to the city’s 
personal department and lost, effective October 26, 2018. 
He filed a charge of discrimination with the EEOC on 

March 28, 2019. See Complaint (doc. no. 1) at ¶ 47. 
After the EEOC denied his charge as untimely, see EEOC 
Documents (doc. no. 12-1) at 1, he brought the present 

suit. 

 II. STANDARD ON MOTION TO DISMISS 

 Defendants frame their motion as being brought 
entirely under Federal Rule of Civil Procedure 12(b)(6) 
for failure to state a claim upon which relief can be 
granted. To survive a motion to dismiss under Rule 

12(b)(6), a complaint “must contain sufficient factual 
matter, accepted as true, to ‘state a claim to relief 
that is plausible on its face.’” Ashcroft v. Iqbal, 556 
U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 

 4 
550 U.S. 544, 570, (2007)). “A claim has facial 
plausibility when the plaintiff pleads factual content 

that allows the court to draw the reasonable inference 
that the defendant is liable for the misconduct alleged.” 
Id. 
 Defendants’ argument that Milner’s ADA claims should 

be dismissed for failure to exhaust administrative 
remedies, however, does not come under Rule 12(b)(6): 
“[M]otions to dismiss for failure to exhaust are not 

expressly mentioned in Rule 12(b).” Bryant v. Rich, 530 
F.3d 1368, 1375 (11th Cir. 2008). Instead, failure to 
exhaust is considered “a matter of judicial 
administration.” Id. Although the Eleventh Circuit 

Court of Appeals has held that exhaustion issues may be 
raised in a motion to dismiss and decided at that stage 
of the litigation, the court’s consideration of the 
arguments regarding exhaustion are not subject to the 

same limitations about what factual material may be 
considered as apply to Rule 12(b)(6) motions. See id. 
at 1375-76. 

 5 
 Therefore, the documents related to Milner’s 
dismissal and EEOC charge that are attached to 

defendants’ motion to dismiss are proper for the court 
to review at this juncture. When deciding a motion to 
dismiss for failure to exhaust, “it is proper for a judge 
to consider facts outside of the pleadings and to resolve 

factual disputes so long as the factual disputes do not 
decide the merits and the parties have sufficient 
opportunity to develop a record.” Bryant, 530 F.3d at 

1376. Milner had opportunities to bring forward facts 
supporting his claim on the question of exhaustion both 
in response to the motion to dismiss and in a separate 
filing on the issue ordered by the court. See Order 

(doc. no. 19). 

 III. DISCUSSION 

 As described above, defendants challenge the 
inclusion of Montgomery Fire/Rescue and three of the city 
officials as defendants in this suit, and they argue that 
Milner’s ADA claims should be dismissed for failure to 

 6 
exhaust and his § 1983 claims should be dismissed as 
precluded by the ADA. Because the court agrees with 

defendants that Milner has failed to exhaust his ADA 
claims and that his § 1983 claims are precluded, it need 
not consider the arguments regarding the status of 
Montgomery Fire/Rescue or the amenability of the 

individual defendants to suit. 

 A. ADA Claims 

 Defendants argue that Milner failed to file his 
charge of discrimination with the EEOC within the 
timeframe allowed by the ADA; if this is true, it would 

bar his suit. See Maynard v. Pneumatic Prods. Corp., 256 
F.3d 1259, 1262 (11th Cir. 2001).3 

 3. They also argue that Milner’s ADA retaliation 
claim should be dismissed because he failed to allege 
retaliation in the charge he ultimately filed with the 
EEOC. The court does not reach this argument because it 
dismisses Milner’s ADA claims for failure to file a 
timely EEOC charge. 
 7 
 Milner counters that the deadline to file his EEOC 
charge did not elapse until April 2019 because his 

termination was not final until his appeal through the 
City’s personnel department concluded in late October 
2018. See Complaint (doc. no. 1) at ¶¶ 27, 29, & 31. 
And he says that, even if the deadline did run before he 

filed his charge in March 2019, he should be allowed 
discovery before dismissal on whether the deadline should 
be tolled “by either the City’s own administrative 

procedure or by virtue of the EEOC being shut down for 
the federal government shutdown.” Response to Motion to 
Dismiss (doc. no. 18) at 5-9. Finally, he says that 
tolling the deadline is appropriate because he “was 

informed that termination of his employment was not 
final” until the internal appeals process resolved. 
Complaint (doc. no. 1) at ¶ 29. After the court requested 
additional information on this issue, Milner explained 

that he was “told by General Sams (Director of Public 
Safety) in a conversation in his office that my 
termination was not final until the appeal process was 

 8 
completed, and that if the appeal process was successful, 
my employment could possibly be fully reinstated.” 

Affidavit of Anthony Milner (doc. no. 20-1) at 2. 
 In general, in the absence of certain circumstances 
not applicable here, plaintiffs suing under the ADA for 
unlawful employment practices must file charges with the 

EEOC within 180 days of the practice of which they 
complain. See Maynard, 256 F.3d at 1262. “The 180-day 
period is counted from the date the employee receives 

notice of termination.” Wright v. AmSouth 
Bancorporation, 320 F.3d 1198, 1201 (11th Cir. 2003). 
The pursuit of internal appeals or grievance procedures 
does not toll this time limit. See Stafford v. Muscogee 

Cty. Bd. of Educ., 688 F.2d 1383, 1388 (11th Cir. 1982); 
see also Jordan v. City of Montgomery, 283 F. App’x 766, 
768 (11th Cir. 2008) (finding that appeal of city 
employee through Montgomery personnel board did not toll 

EEOC charge-filing deadline); Del. State Coll. v. Ricks, 
449 U.S. 250, 261 (1980) (“[T]he pendency of a grievance, 
or some other method of collateral review of an 

 9 
employment decision, does not toll the running of the 
limitations periods.”). 

 Milner received notice of his termination in July 
2018. He was told to return his equipment, and his 
dismissal was reflected in payroll. See Termination 
Documents (doc. no. 12-2) at 2-3. The 180-day clock to 

file his charge with the EEOC began to run at that point. 
His appeal through the city’s personnel department did 
not toll the running of this limitations period. See 

Jordan, 283 F. App’x at 768. 
 If no reason exists to extend this period, his 
deadline for filing an EEOC charge came and went in late 
December 2018 (180 days from July 2, 2018, the effective 

date of his termination) or very early January 2019 (180 
days from July 5, 2018, when he received notice of his 
termination), several months before he filed his charge. 
Milner asks the court to extend his filing window under 

the doctrine of equitable tolling, which applies when a 
claimant “untimely files because of extraordinary 
circumstances that are both beyond his control and 

 10 
unavoidable even with diligence.” Motta ex rel. A.M. v. 
United States, 717 F.3d 840, 846 (11th Cir. 2013) 

(quoting Arce v. Garcia, 434 F.3d 1254, 1261 (11th Cir. 
2006)). Equitable tolling “is an extraordinary remedy 
which should be extended only sparingly.” Chang v. 
Carnival Corp., 839 F.3d 993, 996 (11th Cir. 2016) 

(quoting Justice v. United States, 6 F.3d 1474, 1479 
(11th Cir. 1993)). “[I]t is the plaintiff’s burden to 
show that equitable tolling is warranted.” Id. 

 Milner has not shown the extraordinary circumstances 
necessary for equitable tolling to apply. Before his 
deadline ran in late December 2018 or early January 2019, 
the complaint alleges that his counsel did two things: 

“began attempts to use the EEOC’s online portal in order 
to file a charge of discrimination,” and “telephoned the 
Birmingham, Alabama, office of the EEOC and held for 52 
minutes before being instructed by an EEOC representative 

in Birmingham to use the EEOC portal to schedule an 
appointment for an in-person or telephone interview for 
[Milner].” Complaint (doc. no. 1) at ¶¶ 33-34. It is 

 11 
undisputed that Milner or his counsel could have 
submitted his EEOC charge by mail regardless of the 

availability of the online portal. See 29 C.F.R. 
§ 1601.8 (2018) (“A charge may be made in person or by 
mail at any office of the Commission or with any 
designated representative of the Commission.”). The 

failure to do so does not meet Milner’s initial burden 
to show that he exercised due diligence in pursuing his 
claim, “a necessary, though not sufficient, prerequisite 

that a plaintiff must satisfy.” Chang, 839 F.3d at 996. 
 Milner argues that his ability to timely file was 
impacted by the shutdown of the federal government 
between December 22, 2018, and January 25, 2019. See 

Complaint (doc. no. 1) at ¶ 32. But the shutdown did not 
prevent him from filing his charge: “The EEOC accepted 
charges during this time to preserve individuals’ rights 
under the law.” What You Should Know About the Impact 

of the Lapse in Appropriations on EEOC Timelines, Equal 
Emp. Opportunity Comm’n, 
https://www.eeoc.gov/wysk/what-you-should-know-about-im 

 12 
pact-lapse-appropriations-eeoc-timelines.4 Even if 
Milner’s ability to file his charge had been affected 

during the shutdown, he still had sufficient time to file 
his charge before the shutdown began, and the 
approximately five-week shutdown through January 25, 
2019, would in any event hardly excuse missing his filing 

deadline by nearly three months, in late March 2019. 
 He also argues that equitable tolling should apply 
because he “was informed that termination of his 

employment was not final until October 26, 2018,” when 
his appeal ended. Complaint (doc. no. 1) at ¶ 29. In 
response to the court’s request for more information 

 4. The court may take judicial notice of the EEOC’s 
statement regarding the functions it maintained during 
the government shutdown under Federal Rule of Evidence 
201(b)(2), because the EEOC’s explanation of its own 
operations is “not subject to reasonable dispute” and 
“can be accurately and readily determined from sources 
whose accuracy cannot reasonably be questioned.” Fed. 
R. Evid. 201(b); see also Wilding v. DNC Servs. Corp., 
941 F.3d 1116, 1123 (11th Cir. 2019) (courts may take 
judicial notice of “undisputed historical and political 
fact”); K.T. v. Royal Caribbean Cruises, Ltd., 931 F.3d 
1041, 1047-48 (11th Cir. 2019) (Carnes, C.J., concurring) 
(courts may take judicial notice of agency records and 
reports). 
 13 
about this allegation, Milner clarified that he “was told 
by General Sams (Director of Public Safety) in a 

conversation in his office that my termination was not 
final until the appeal process was completed, and that 
if the appeal process was successful, my employment could 
possibly be fully reinstated.” Affidavit of Anthony 

Milner (doc. no. 20-1) at 2. 
 Equitable tolling is available “where the 
complainant has been induced or tricked by his 

adversary’s misconduct into allowing the filing deadline 
to pass.” Irwin v. Dep’t of Veterans Affs., 498 U.S. 89, 
96 (1990). But on the totality of the facts presented 
here, Milner’s conversation with Sams is insufficient to 

meet this standard. In particular, the evidence reflects 
that Milner retained counsel (at least by early December 
2018, if not earlier) long before the deadline for filing 
his EEOC charge elapsed (in late December 2018 or early 

January 2019). See Complaint (doc. no. 1) at ¶ 33. 
Milner was not “tricked by his adversary’s misconduct” 
into letting the deadline slip by. Sams’s statement that 

 14 
his firing was not “final” until the appeal concluded was 
a misstatement of the applicable law. Milner’s counsel 

should have known that Milner’s appeal did not toll the 
deadline for his EEOC charge, and counsel had ample 
opportunity to correct whatever misunderstanding of the 
law Sams’s statement caused before the filing deadline 

ran. See Jordan, 283 F. App’x at 767-68 (finding that 
appeal of city employee did not toll EEOC charge-filing 
deadline even though supervisor incorrectly told employee 

that termination would not be effective until Montgomery 
personnel board had reviewed action). 
 As such, the circumstances of this case do not permit 
equitable tolling to rescue Milner’s claims from the 

untimely filing of his charge with the EEOC. When 
Milner’s counsel encountered difficulty with the EEOC’s 
online portal in the weeks before the filing deadline, 
he should have filed Milner’s charge through one of the 

other filing methods available to him. By not doing so, 
he failed to exercise diligence in prosecuting Milner’s 
claim in at least one of two important ways: either by 

 15 
miscalculating when the limitations period began to run, 
or by misunderstanding the possible ways of submitting 

an EEOC charge. But while certain “serious instances of 
attorney misconduct” may constitute the extraordinary 
circumstances necessary for equitable tolling to apply, 
the Supreme Court has held that an attorney’s 

miscalculation of deadlines presents instead a “garden 
variety claim of excusable neglect” and does not suffice. 
Holland v. Florida, 560 U.S. 631, 651-52 (2010) (quoting 

Irwin, 498 U.S. at 96). For these reasons, Milner’s 
claims under the ADA will be dismissed. 

 B. Section 1983 Claims 
 Milner also brings suit for the alleged ADA 
violations under 42 U.S.C. § 1983, which “generally 
supplies a remedy for the vindication of rights secured 

by federal statutes.” Gonzaga Univ. v. Doe, 536 U.S. 
273, 284 (2002). But the Eleventh Circuit Court of 
Appeals has specifically held that plaintiffs are 
precluded from bringing suit under § 1983 “in lieu of--or 

 16 
in addition to--a[n] ... ADA cause of action if the only 
alleged deprivation is of the ... rights created by ... 

the ADA.” Shotz v. City of Plantation, 344 F.3d 1161, 
1176-77 (11th Cir. 2003) (quoting Holbrook v. City of 
Alpharetta, 112 F.3d 1522, 1531 (11th Cir. 1997)) 
(alterations in original). The “comprehensive 

legislative scheme” of the ADA “foreclosed a remedy under 
§ 1983.” Id. at 1176 (quoting Gonzaga, 536 U.S. at 284 
n.4). Because Milner’s § 1983 claim simply reiterates 

the ADA violations he alleges, see Complaint (doc. no. 
1) at ¶ 56, it cannot proceed. 
 *** 
 Accordingly, defendants’ motion to dismiss will be 

granted as to all claims in Milner’s complaint, and this 
suit will be dismissed with prejudice. 
 A separate judgment will be entered. 
 DONE, this the 21st day of January, 2021. 

 /s/ Myron H. Thompson 
 UNITED STATES DISTRICT JUDGE 

 17